Mr. Uribe, may it please the court. Good morning. My name is Durley Uribe. I'm court appointed to represent my client, Mr. Huerta. This is an important case, and it's important because it illustrates the importance of government promises and the importance and significance of government promises. It was incumbent upon Huerta to show he was entitled to acceptance of responsibility, wasn't it? Yes, Your Honor, and I think — You're a little loose with saying government promises, because he dropped the ball there. He didn't seek acceptance responsibility before sentencing. Your Honor, I think the record is clear that my client a very clear statement of acceptance of responsibility at sentencing. When? At sentencing. But why didn't he do it before sentencing, so that all of this could have been fleshed out, and the probation office could have had a chance to respond to it, or the United States attorney could have had a chance to be ready to respond? This — that's where your client dropped the ball. Your Honor, the — if one looks at the plea agreement, there's no requirement that it take place anywhere. It just says that if my — the offer was that if my client pled guilty, the government promises to reduce the sentencing level by two levels if he demonstrates acceptance of responsibility. At sentencing — Well, it said if he clearly accepts responsibility, so I'm not really sure how much of a promise that is, because if someone clearly accepts responsibility, the judge is going to give the reduction really regardless of what the government says. Yes, Your Honor. How do you read that clearly? To me, that seems to be your biggest obstacle, that your client had to clearly accept responsibility, and probation didn't think he clearly had accepted responsibility, nor did the judge. So why was the government supposed to think he had clearly accepted? Your Honor, I'm — I'm just stating what's in the sentencing record, Your Honor, and these are my client's statement that he made at sentencing. He said, I take full responsibility for my actions. I admit and agree with the court of law I committed a crime. I hope you take into consideration my — Sir, we've read the briefs. We've read all of this. He also says, I'm not a bad person. I just made bad choices. That — that is what he said at sentencing, Your Honor, when he was given allocution. Your Honor, it's — it's my argument that the government plainly breached the plea agreement, because — You say plainly breached because no one pointed out to the judge that — this. So we're here reviewing on plain error review, right? That is correct, Your Honor. That is the applicable standard of review, and we believe all the prongs have been met. How is it clear or obvious error on the part of the district judge? I know we — in fact, you know, some of our case law in our court says if it's a question of fact, it can never be a clear or obvious error, and I know that's been questioned. But here, even though he didn't do anything pretrial, he presented his — his comments to the judge. The judge, at the start, I think, of the hearing or during the hearing, said, well, you didn't seek acceptance or responsibility. You didn't get that. And they didn't say, oh, no, no, judge, that's what we're going to do now. So how can this be clear or obvious error on the part of the district judge? It's clear or — or obvious, Your Honor, because the plea agreement doesn't stipulate where it has to take place. No, sir. But he did give his allocution, et cetera, and nobody pointed out to the judge, Your Honor, if I show clear — if I clearly show acceptance or responsibility, I get acceptance or responsibility. So the judge is blindsided there. Then your client does, at allocation or otherwise, state he regrets what he's done. How is it clear or obvious error for the judge not to have granted acceptance or responsibility? The — the case law addresses that, Your Honor, in particular, the — the Munoz case. What? What case? Munoz. Munoz. Munoz? Munoz. Yes, Your Honor. That — that case was actually a case cited by the government. And that — that — that case relied or contained an implied promise that this court enforced, and it also applied the plain error standard of review. And the court determined all the elements were met in that case, and the government promised was enforced. We think that case — we — we — actually, our case is — has a more compelling argument, Your Honor, because we — we're not relying on an implied promise. We're relying on an implied promise in the plea agreement that says, upon a demonstration of acceptance of responsibility, which my client gave as sentencing — A clear demonstration of acceptance of responsibility, as Judge Costa has pointed out. I believe that's been established, Your Honor. And the plea agreement does not state where that has to take place. You're right about that. The plea agreement doesn't say anything about timeliness. But the sentencing guidelines do say the timeliness of accepting responsibility is a factor in whether the points are awarded. So how do you deal with that guideline language? That — I think that when — when my client gave his statement of — of acceptance at sentencing, Your Honor, it was up to the government to state whether or not that was insufficient or not. The case law here, for example, the Puckett case, the fact that was compelling that led the court not to find that there was a plain error was that there was an intervening crime. The defendant committed a crime from the time he pled guilty to the time of sentencing. And the court felt — felt that the final prong of the plain error couldn't be satisfied. The other case was Clough. In that case, the court found that the defendant obstructed justice and made false statements under oath. We don't have any facts like that whatsoever in this case. And another case is the Mejia case, where the court found that the defendant minimized his role in the offense. We have very clear statements of acceptance of responsibility that my client made at sentencing. But your client said he made some mistakes. And your client said he made some mistakes and so forth and all that. That's not sort of stridently accepting responsibility, is it? In context, Your Honor, he further stated, I take full responsibility for my actions. I admit and agree with the court of law I committed a crime. I hope you take into consideration my sincerity and give me the lowest sentence term possible. There was no argument whatsoever that that was inadequate or insufficient by anybody. There was no finding. We made that at allocution, didn't we? I'm sorry, Your Honor? Didn't he say that at allocution? He said that at the sentencing, Your Honor, yes. As part of his allocution? Correct. Right. This is at the end of sentencing. Are you saying the government was supposed to have jumped up during sentencing and said, oh, no, Your Honor, that doesn't satisfy acceptance of responsibility? I'm saying that our position... No. Just answer me, yes or no. Are you saying when he said that, the government should have said, oh, wait, he's trying to get acceptance of responsibility and jumped up and said, we object, Your Honor. He hasn't shown acceptance of responsibility. I think it was incumbent upon the government to either comply with their contractual obligation, Your Honor, and recommend a two-level reduction or give a statement as to why the government was not satisfied that those statements of acceptance of responsibility were insufficient or inadequate, and neither occurred. He was charged with conspiracy of drug trafficking, correct? Yes, Your Honor. He was charged with conspiracy of possessing 500 milligrams or more of methamphetamine, Your Honor. That's my understanding. Well, I understood it was conspiracy to distribute an illegal drug. Okay. That's quite a difference. Okay. Don't you agree? Yes, Your Honor. Between possession and distribution? Yes, Your Honor. And so he's charged with conspiracy to distribute. I suppose the argument could be made, well, if he had come forward before sentencing and met with probation and he said, I accept responsibility, I know he's not seeking substantial assistance, but still, they could have debriefed him, he could have demonstrated his acceptance of responsibility by perhaps providing some helpful information to the government or something along that line. It's quite a difference between that and waiting till allocution to say, I accept responsibility or I'm sorry for what I did, and I'm not a bad person, I just made bad choices. I asked my client about the fact, what happened with respect to... Now, wait a minute. You're not going to get into attorney-client privilege here, are you? No, Your Honor. Okay. Well, is this part of the record, what you asked your client? It's not, but I'm... Well, then don't tell us. It's not in the record. Well, the record just reflects what happened with a probation department, and the record speaks for itself, Your Honor. What I'd like to do is just stress the case law of the Fifth Circuit, and it says that plea agreements are strictly construed against the government. The government is required to strictly adhere to the terms and conditions of its promise. The record is clear the government made that promise, and it was either put to an election to either comply with its contractual obligation or give a statement as to why the statement was inadequate or insufficient. If the error was so obvious, then why wasn't there an objection below? I mean, the whole point of the objection is to put the trial judge on alert about the issue. So it's sort of benign at that point, and then it's not, it becomes super serious later. I think if that was the law, then the plain error standard could never be satisfied. Well, the point is, if there was an objection below, we wouldn't be dealing with plain error. The point of the objection is not to avoid the plain error analysis, it's to alert the general concern of what the issue is. And so if the judge wants to ameliorate it, examine more, get in more depth, that can happen in that place, in that space. So when it's sort of by the board, and then it's raised later, well, it's too late for the judge to do anything about it, and then you, then we get an argument saying, well, it was obvious, it was compelling, it was this, it was that. I understand that, Your Honor, and our position on appeal is that the plain error standard of review has been satisfied, Your Honor. You take the view that there was an error and it was obvious? Yes, Your Honor. It's very clear that he demonstrated acceptance of responsibility. It's very clear that — I have a question about the hearing. It seems like at the beginning the government did ask for acceptance. It said it was going to move for the third point for acceptance of responsibility, which is typically even more difficult to get than just the two. So how do we know it breached? I mean, just the judge didn't follow that, but it does say Mr. Salazar for the third point, yes, we are moving for that. Your Honor, our position is that — I believe that's what triggered the comments from my client, which we're contending satisfy the requirement or the conditioned precedent of acceptance of responsibility, Your Honor. Right. But I guess where did the government oppose it? The record is silent, Your Honor. Right. So the government didn't oppose it, and at the beginning of the hearing they asked for the third point for acceptance. You can't get the third point if you don't have the first two. And I think my client complied and — So maybe your complaint with Judge Alvarez is not with the government. If the government did ask for the three-point reduction and the judge just didn't award it. Well, the problem, I think — well, it's with a district court judge as well, but the legal basis on appeal is a breach of a plea agreement. And the term — Right. So how did they breach it if they said at the beginning of the hearing he should get the three points? Because he didn't get it. And they didn't give — Well, they didn't — Everyone knows the government can't control — every plea agreement says, you know, we're just — these are recommendations. Government cannot control what the judge ultimately does. Correct. Correct. But I don't think there's a clear spot in the record where they — where they complied with their contractual requirements to give that — But the court said, is there a motion from the government for the third point, Mr. Salazar, for the third point? Yes, there is, Your Honor. I think maybe that can be construed as them — them complying, but I think the case law could — could — that applies, addresses that maybe that was just window dressing and that wasn't a sufficient enough effort to satisfy the government contractual obligation to give the recommendation. I don't see the words in the record where they explicitly state. I recommend — the government recommends a two-level reduction, Your Honor. And even the court said, had you gotten the two-level reduction, you would — you would be at this sentencing range, which is significant. This is where we have this problem. The government didn't say it because your client never clearly demonstrated to the government that he deserved it. He waited until allocution to bring this up, to talk about he was sorry. And it's our position that that satisfies the plea agreement, Your Honor. And again, we're getting back to what I asked you earlier. So at that point, the government's supposed to jump up and say, oh, well, Your Honor, he has clearly demonstrated, so now we ask you for three — two points. Even though earlier you asked us if we supported three points, and we said we did. Your Honor, in conclusion — That's a funny way to run a railroad. The case is what it is, Your Honor. And the final point I'd like to make is the Purser case stipulates — the 2014 case — is that 97 percent of cases are — are — criminal convictions are obtained by guilty pleas. And, Your Honor, we just ask that the government promises be enforced, Your Honor, to stress the importance of that. All right. Mr. Uribe, you have reserved your rebuttal time to come back up after the government finishes. Let's hear from Mr. Berry. Thank you, Your Honor. May it please the Court. Mr. Marte. Richard Berry for the United States. I feel as though, frankly, the Court has already made the majority of my argument for me. If I may, I would put this case into its factual context. As Judge Barksdale said, had there been an acceptance statement or any attempt to accept responsibility, probation would have put that in the PSR and brought it to the District Court's attention. Probation officer interviewed Mr. Huerta on April 17, 2018. At that time, defense counsel — trial defense counsel — was not present. Mr. Huerta restricted his comments to factual material. The probation officer noted that Mr. Huerta would submit a written statement of acceptance later, which is not at all unusual. On May 2, the PSR was prepared. PSR noted what I have just recounted. Huerta will submit a written statement. That statement has not been submitted as of May 2. Therefore, there is no recommendation for acceptance of responsibility. On May 29, the probation officer submitted an addendum to the PSR, which said that the probation officer had not received any communication from either party. Again, no recommendation for acceptance of responsibility. And finally, on June 22, trial defense counsel submitted a statement in writing. There was no objection to the PSR — that is to say, no objection to the lack of a recommendation for acceptance of responsibility. That left Mr. Huerta precisely where he started. Total offense level 32, criminal history category 5, advisory guideline range 188 to 235. At sentencing, Mr. Huerta relies in his brief on precisely two sentences. I accept responsibility. I agree with the court. I committed a crime. I would respectfully submit that that is in no way, shape, or form what is required under 3E1.1. Truthfully admitting the conduct comprising the offense of commission. In this case, that would have involved a statement that on April 15, 2017, I conspired with Israel Jaramillo, Jose Gonzalez, Alyssa Garza, Anthony Cortinez, and others unknown to the grand jury, to possess 920 kilograms of methamphetamine, to deliver 920 kilograms of methamphetamine. The totality of his statement was, I accept responsibility. Precisely as Judge Barksdale said, that was in the middle of his allocution. He said that he was sorry for what he'd done, that he'd had difficult circumstances in his life, that he was having health problems, and that he regretted his bad decisions. As Judge Costa said, there is nothing in his statements that is a truthful admission of the conduct comprising the offense of conviction. Section 3E1.1 has six application notes. Three of them stress that one of the factors to be considered by the district court is the timeliness of any statement concerning acceptance. In this case, the acceptance came, as Judge Barksdale said during his allocution, I'm guilty, I'm sorry, give me a light sentence. This is hardly a novel statement in federal criminal sentencing. Do you think the government, did the government recommend acceptance or not at the hearing? I mean, what do you make about that statement that we're moving for the third point? Your Honor, the record is not clear what that statement means. I will note for the court that the— But you know what the third point means. It means that's extra, extra acceptance basically. You don't get the third point without the first two. I would note for the court, with respect, that the AUSA at sentencing was substituting for someone else. That doesn't count. Judge Alvarez said, is there a motion for the third point? And then the AUSA said, the third point, but that's as far as we'll go. Then Judge Alvarez said, well, wait a minute, did we ever get to acceptance? She looked at the PSR and said, no, we did not. On the very next page of the sentencing transcript, Judge Alvarez said, so, there's no acceptance, and she stated the range, the advisory guidelines range, and both the defendant and trial defense counsel agreed with that range. As Judge Barstow and Judge Costa both said, that would have been the time for competent defense counsel. Assuming you had not done so earlier, that would have been the time to say, we're trying to qualify for acceptance. Obviously, defense counsel should have spoken up when the PSR was issued on May 2nd and there was no recommendation for acceptance, or certainly by May 29th when the addendum was filed and there was still no recommendation for acceptance. But assuming one had waited, strictly for the sake of argument, one had waited to sentencing, it would behoove defense counsel and the defendant both to bring it to the district court's attention in the clearest and most straightforward manner that Huerta was trying to qualify for acceptance of responsibility. Since, from Huerta's position, it made a difference of 27 to 48 months, depending on which range he wound up in. None of that happened. There was never an objection. There was never a statement, oh, your honor, we're trying to qualify for acceptance. He simply read a letter. It was not spurred by anything that happened. It was, according to the record, it was something that he read off of a prepared statement. There was nothing to draw the court's attention to that. And in relation to Judge Barksdale's question to opposing counsel, I did not brief that this was a factual, the argument that this was a factual issue that could have been resolved in the district court had it been raised and, therefore, it could not ever constitute plain error. I'm fully cognizant of that argument. That argument did occur to me. I respectfully submit that it is elusively clear that there was no acceptance of responsibility in this case and that the district court did not commit an error. He's not satisfied any of the prongs of plain error. He's not satisfied the first or second prong, and, therefore, there's no reason to address the other two. Is this the standard language that the government will agree to move for acceptance if it's clearly demonstrated? Is that standard language or unique to this case? No, sir. I believe that's the standard language in the Southern District plea. In fact, I believe that's been the standard language in the Southern District plea for quite some time for what at this very moment are obvious reasons. We'll recommend acceptance if the defendant clearly accepts responsibility. It's almost directly out of Application Note 1 to 3E1.1. If the defendant clearly accepts responsibility, clearly demonstrates acceptance of responsibility, then we will recommend a two-level reduction under 3E1.1a. It's a simple condition precedent, which in this case was not met. All right, Mr. Baird. If the court has any questions, I'd be delighted to answer them. Otherwise, I'll surrender my time. All right. Thank you, sir. I believe we have the government's argument. All right. Back to you, Mr. Ruby, if you have any rebuttal. Yes, Your Honor. I just want to emphasize to the court that we have the plain error standard of review because Mr. Huerta's counsel didn't object. Mr. Huerta's counsel didn't object, and he didn't follow through with probation. But the law is not that plea agreements are construed against my client. Plea agreements are construed against the government. My government complied with his contractual obligation. When things were in his control. When did he comply with his contractual obligation? He complied with his contractual obligation. His obligation was to demonstrate acceptance. When? I said when? At sentencing, Your Honor. When in sentencing? That was the only situation he could control, Your Honor. So you're saying he did so at allocution, at the end of sentencing? Yes, Your Honor. He did it at his sentencing, Your Honor, at allocution. Okay. Couldn't his lawyer have stood up at the start of sentencing and said, Your Honor, by the way, we didn't object to the PSR, but I want to take advantage of the plea agreement where it said my client gets acceptance of responsibility if he clearly demonstrates, and I would like to have him offer testimony on that. I wish his counsel did do that, Your Honor. I have the record that I have, and the law is what it is. Plea agreements are construed against the government, not against my client. My client complied with his obligation. He demonstrated acceptance of responsibility in a very sincere, contrite way, the only opportunity when it was in his control, and he complied with it. Wait. When it was in his control, but your client is bound by the actions of his lawyer, of course. Yes, Your Honor. It was in his control at the very start of sentencing, throughout sentencing, and prior to sentencing. And that's why we have the plein air standard of review, Your Honor. That's why we're here. And the elements of that standard of review, it is my contention that they have been met. And I believe also the law is on my client. So you're saying that at a meeting with PSR, I'm sorry, at a meeting with probation to prepare the PSR, or if counsel had made a timely objection, there was nothing more that your client could have said to demonstrate acceptance of responsibility? All I know is what the record says, Your Honor. And it says that he was going to comply a written statement. For whatever reason, that didn't happen. He's in jail, Your Honor. There's only certain things he can do. He's relying on his attorney. If his attorney were up— I didn't ask the question very well. But you're saying that there was no more information he could have provided to clearly demonstrate acceptance of responsibility than what he said in allocution? I believe that's the only record I have, Your Honor. All right. And as I said, the plea agreement does not stipulate where that has to take place. It happened at the only opportunity my client had to address the court, and he did it, Your Honor. He said what he said, and it's our contention that satisfies it. And the burden isn't on him with respect to how plea agreements are construed. The burden is on the government. And because the government has that burden, it had the obligation at that point to either fulfill its contractual obligation to recommend the two-level reduction or state on the record why that's unsatisfactory. And it didn't either. And so we believe the government does not have a basis to argue that the elements of the plain error standard of view have not been met. We do not have a situation like we do in the cases in the Puckett case where we had an intervening crime, where we have statements of someone not minimizing his role in the offense, et cetera, et cetera. Those were factual bases that the courts used to deny the final prong of the plain error standard of review. We don't have any of that here. We have the term of the plea agreement. We have acceptance of responsibility, and we have a clear failure from the government to satisfy its contractual obligation. All right. Thank you. Mr. Ruby, you were appointed counsel for purposes of the appeal, and you have briefed the case for us, and you have ably provided argument on behalf of your client here today, and the court appreciates you and all our court-appointed attorneys who take these cases, who come, and who present the case on behalf of their client. So with that, I thank you on behalf of not only the panel but the court itself. Thank you, Your Honor, and it is my honor to be here in front of you all today. All right. Thank you, Mr. Berry. Thank you for coming. Appreciate it. All right. The case will be-